<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL WEAVER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, DETECTIVE EDWIN CARRERO, LIEUTENANT POWELL, DETECTIVE RICARDO MACIEIRA, DETECTIVE RUBEN BAEZ, DETECTIVE MATTHEW NICE, SERGEANT LUAN SERRANO, DETECTIVE RONNIE E. CRUZ, DETECTIVE JONATHAN SALAS, JANE DOE, JOHN DOES,<br><br>Defendants. | Case No. 2:26-cv-02133 (BRM) (MAH)<br><br>**MEMORANDUM ORDER** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Michael Weaver's ("Weaver") application to proceed *in forma pauperis* ("IFP") and Amended Complaint alleging violations of his constitutional rights. Having reviewed Weaver's IFP application, and for good cause appearing, his application has been **GRANTED**.

Because Weaver is proceeding *in forma pauperis*, the Court has an obligation to screen the Amended Complaint under 28 U.S.C. § 1915(e)(2). *Stamos v. New Jersey*, Civ. A. No. 09-5828, 2010 WL 457727, at *2 (D.N.J. Feb. 2, 2010), *aff'd*, 396 F. App'x 894 (3d Cir. 2010) (applying § 1915 to nonprisoners). When reviewing such actions, the PLRA instructs courts to dismiss cases that are at any time frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune. *Id*. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) is the same as that for

1

dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Furthermore, while *pro se* pleadings are liberally construed, they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). All pleadings are likewise required to meet the pleading requirements of Federal Rule of Civil Procedure 8 (requiring, as to complaints, "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought"). *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (noting the complaint must "provide the opponent with fair notice of a claim and the grounds on which that claim is based").

Weaver's complaint is straightforward; he alleges deprivations of rights under 42 U.S.C. § 1983, and an action for the violation of his civil rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against the officers who investigated

and arrested him on a narcotics charge. Weaver is a pretrial detainee, and his criminal case is pending. (Am. Compl. (ECF No. 6) at 2.)

Weaver complains of several invasive searches conducted by the group of law enforcement officers who had been surveilling him as part of a narcotics investigation. (*Id.* at 10.) These included a strip search, a search of his car that required it to be dismantled, and a raid on his home or apartment. (*Id.* at 10.) Weaver attests that some of these searches, such as the strip search, uncovered no evidence of wrongdoing but were nonetheless humiliating and damaged his property. (*Id.* at 4.) However, Weaver is forthcoming that these searches occurred after his associate, who was arrested alongside him, was carrying narcotics on her person and after the "police had sought" and received valid search warrants. (*Id.* at 4, 10, 12.)

First, Weaver requests the Court find an implied cause of action for a violation of his Fourth Amendment rights under *Bivens*, 403 U.S. at 391. (ECF No. 6 at 2.) Courts do not readily entertain implied actions under *Bivens*. *Egbert v. Boule*, 596 U.S. 482, 492 (2022) ("[I]f we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."). However, rather than overturn *Bivens*, the Supreme Court instructs courts to first determine whether the claim at issue "presents a new *Bivens* context." *Ziglar v. Abbasi*, 582 U.S. 120, 122 (2017).

"If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Meaningful differences may include, *e.g.,* the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not considered in previous *Bivens* cases." *Id.* If the cause of action is a new context, the Court will determine if the Court is "arguably less equipped than

3

Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* If it is, the Court has no role finding an implied action. *Egbert*, 596 U.S. at 492.

Weaver has not made any allegation that his case parallels an accepted *Bivens* framework, or that the Court is best positioned to weigh these considerations. Furthermore, *Bivens* works to constrain the actions of federal law enforcement—whereas all the defendants in this case are state police. *Compare Bivens*, 403 U.S. at 390 (holding there is an implied action for damages "for an unconstitutional invasion of . . . rights by federal agents"); *with* (ECF No. 6 at 3–16 (listing all defendants' positions in the local police department)). Therefore, this claim is dismissed with prejudice as amendment is futile.

Although Weaver's claims under § 1983 are not legally impossible, they likewise are not sufficiently pled. To allege a claim of deprivation of rights a plaintiff must allege facts sufficient to show "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Weaver is clear that the officers who arrested him and conducted the searches were operating under color of New Jersey Law. (ECF No. 6 at 4, 10, 12.) Though less clear, as Weaver never expressly identifies the constitutional right violated, the Court interprets his complaint as alleging a violation of his Fourth Amendment right against unlawful search and seizure. (*Id.* at 7–10.)

There are four searches Weaver complains violated his rights: a search of his person which occurred where he and his associate were arrested, a second more invasive search once secured at the police precinct, and two searches obtained pursuant to warrants of his vehicle and home. (*Id.* at 4, 7, 10.) According to Weaver, he was the subject of a surveillance operation by the Defendants who were investigating narcotics trafficking in Newark. (*Id.* at 2.) On February 16, 2024,

detectives observed Weaver and a "third party" they believed to be Weaver's associate handling, and possibly dealing, narcotics. (*Id.* at 2–3.)

Because of these observations, the detectives moved in and seized both Weaver and the associate, "Ms. Montague," and searched them both. (*Id.* at 5.) The search uncovered a substantial amount of narcotics on Ms. Montague's person, but none with Weaver. (*Id.* at 5–6.) Weaver's allegations suggest that he physically, but non-violently, resisted the search by "jumping back" while the officers attempted to search him and attempting to walk away during the search. (*Id.* at 9.) During his seizure, the police identified Weaver as an individual who had fled from them a few days prior, and as the subject of a search warrant which had yet to be executed. (*Id.* at 6.) Because of the circumstances of this search, the officers took Weaver into custody and impounded his vehicle rather than have it sit unattended on the side of the road. (*Id.* at 11.)

Weaver objects that this search, arrest, and impoundment was without probable cause or reasonable suspicion. "The Fourth Amendment protects [t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 621 F.3d 296, 301 (3d Cir. 2010), *aff'd*, 566 U.S. 318 (2012). "Reasonableness under the Fourth Amendment is a flexible standard . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* Searches and seizures are almost always "reasonable when [they are] carried out with a warrant based on probable cause," whereas "[w]arrantless searches are presumptively unreasonable." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). It is not clear from the face of the complaint whether the initial search was subject to a warrant, but from the facts alleged it would be clear the search was reasonable regardless. (ECF No. 6.)

An "officer may conduct a brief, investigatory search consistent with the Fourth Amendment without a warrant under the 'narrowly drawn authority' established for a *Terry* stop." *Ramos*, 443 F.3d at 308 (*quoting Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Here, the officer observed what appeared to be the handling of narcotics by Weaver and an associate, had discovered narcotics on the associate's person, and believed Weaver to be an individual who "got away from them days prior." (ECF No. 6 at 6.) The elements of the search Weaver objects to—such as a momentary lapse in focus by an officer "breaking continuity of observation" during surveillance, the hostile conduct of the officers during and immediately after the search, or the fact that no narcotics were found on his person—do not undermine the reasonableness of the search or probable cause for arrest. (*Id.* at 2.)

The remainder of the searches appear to have been made pursuant to judicially issued search warrants. (*Id.* at 6, 10.) There is some ambiguity as to whether the second search of his person was conducted pursuant to a warrant. (*Id.*) It is clear Weaver was taken into custody after the officers realized he was the subject of search warrants they had obtained as part of this investigation. (*Id.* at 6.) However, what searches the warrant authorized is not specified in the complaint. (*Id.*) Nor does the complaint provide any detail on how the strip search was conducted, beyond that it occurred at the precinct, and it required him to remove his clothes. (*Id.* at 7.)

Therefore, there are not sufficient allegations for the Court to determine whether the officers' search was conducted in a reasonable manner, because whether a strip search is reasonable depends on "the circumstances under which they occurred," not what they uncovered or the "ultimate culpability" of the person searched. *Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 671 (E.D. Pa. 2010). The Court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," to

determine the reasonableness of an invasive personal search. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (holding that body-cavity searches may be conducted without probable cause). The Supreme Court has held the policy of warrantless strip searches of all arrestees at the time of intake is not unreasonable to prevent the introduction of contraband. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012). Because there are no allegations these strip searches were unusually invasive or unjustified, Weaver has failed to plead a claim under § 1983 on the basis of this search.

The fact the police properly sought and received a search warrant before conducting the search of Weaver's home and vehicle provides a substantial barrier to Weaver's right to recover in this case. Furthermore, Weaver does not purport to challenge the validity of the warrant or provide the Court a basis to doubt their validity. (ECF No. 6 at 4 (alleging Detective Edwin Carrero "applied for" and "executed" the search warrant, without elaboration).) "There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Without reason to doubt the basis of the search warrants, the Court cannot entertain Weaver's claim for deprivation of rights, even if the search ultimately in question turned up no evidence, or (as Weaver alleges) evidence unrelated to the crime initially being investigated.

To the degree Weaver is challenging the basis of the warrants themselves, he must allege facts sufficient to show the police (1) "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and (2) "such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Weaver includes no such allegations. (ECF No. 6.) Further, given the circumstances alleged in his Amended Complaint—such as the narcotics in the possession of his associate, and evidence recovered from the search of his home—

it seems unlikely that he could do so. (*Id.* at 4, 10, 12.) Even so, Weaver's § 1983 claims do not present a legal impossibility at this juncture and amendment to this claim would not be futile.

Accordingly, and for good cause appearing,

**IT IS** on this 13th day of April 2026,

**ORDERED** that Weaver's Application to Proceed IFP is **GRANTED**; and it is further

**ORDERED** that Weaver's *Bivens* claim is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that Weaver's claim under § 1983 is **DISMISSED WITHOUT PREJUDICE.** Weaver has leave to amend the complaint, limited to curing any deficiencies addressed herein, within twenty-one (21) days from this order. Failure to amend the complaint within this time will result in automatic dismissal without further action from the Court; and it is further

**ORDERED** that Weaver's Motion to Stay Proceedings is **DENIED AS MOOT**. This denial is without prejudice, should Weaver file an amended complaint that is permitted to proceed he may renew his Motion to Stay at that time; and it is further

**ORDERED** that the Clerk of Court shall mark this matter **CLOSED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

8